J-S33010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DAYVON COX | |
| Appellant | No. 936 WDA 2015 |

Appeal from the PCRA Order December 22, 2014
in the Court of Common Pleas of Beaver County Criminal Division
at No(s): CP-04-CR-0000122-2006

BEFORE: GANTMAN, P.J., OLSON, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:             **FILED NOVEMBER 14, 2016**

This case returns to us after the PCRA[1] court permitted former counsel to withdraw and determined that Appellant, Dayvon Cox, intended to proceed *pro se* and knowingly and voluntarily waived his right to counsel in this appeal. Appellant appeals *pro se* from the order denying his timely first PCRA petition without a hearing. He asserts the PCRA court erred in denying relief on his claims that (1) direct appeal counsel was ineffective for not challenging the trial court's decision not to replace a juror who belatedly revealed his wife was a victim of sexual abuse, (2) the imposition of a mandatory minimum sentence was illegal under ***Alleyne v. United States***, 133 S. Ct. 2151 (2013), and (3) trial counsel was ineffective for not seeking the appointment of a rebuttal expert for the sexually violent predator

---

[*] Former Justice specially assigned to the Superior Court.

[1] Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.

("SVP") proceeding. Additionally, Appellant claims the PCRA court erred in denying relief on his assertions that prior counsel were ineffective for failing to (1) challenge the trial court's decision not to replace two jurors who had contact with a victim's relative and a support advocate during deliberations, (2) challenge the trial court's decision to sustain the Commonwealth's use of a peremptory strike of a prospective juror under **Batson v. Kentucky**, 476 U.S. 79 (1986), and (3) seek admission of evidence of a victim's prior sexual activity as an exception to the Rape Shield, 18 Pa.C.S. § 3104.[2] We affirm.

This Court previously summarized the facts and procedures underlying Appellant's convictions as follows:

> In the prosecution of this case, the Commonwealth presented testimony from [J.M.], [M.M.] and Brandon Morgan. They testified to a meeting in East Rochester between the three (3) of them and [Appellant] and Brandon Revis. The purpose of this meeting was for Morgan to take [Appellant] and Revis to another individual who could supply them with marijuana. After reaching their destination and not finding the individual, [Appellant] pulled out a gun, struck Morgan in the head with it and forced Morgan back into the vehicle and made him drive. At this point, [Appellant] was in control of the vehicle's passengers. [Appellant] held a gun to [J.M.]'s head before again pointing the gun at Morgan. After forcing Morgan to pull into a parking lot, [Appellant] shot out the driver's window in Morgan's vehicle and asked Morgan if he thought "he was joking around". Next, [Appellant] forced Morgan to drive toward Rochester. Morgan continued driving into Monaca and [Appellant] forced Morgan, at gunpoint, out of the driver's seat and into the back

---

[2] We have reordered the claims presented in Appellant's brief.

seat. [Appellant] then began driving the vehicle. [Appellant] struck Morgan in the head with his gun once again and demanded any money that Morgan had with him. At this point, [Appellant] forced [J.M.] and [M.M.] to remove their clothing. Next, [Appellant] forced Morgan to withdraw three-hundred dollars ($300.00) at an ATM, while accompanied by Revis, and demanded any jewelry [J.M.] and [M.M.] were wearing. After driving to another parking lot, [Appellant] told the three (3) victims to get out of the vehicle and then forced [J.M.] to return to the vehicle and perform oral sex on him, as well as, vaginal sex. [Appellant] also pointed his gun at [M.M.] and forced her to perform oral sex on Brandon Morgan. After a short time, [Appellant] left Morgan and [M.M.] and drove [J.M.] to an alleyway where he forced [J.M.] to engage in sexual activity with [four men in addition to Appellant] who had assembled there.

Morgan and [M.M.] were able to stop Aliquippa Police Officer Donald Lane as he was responding to a possible burglary call. They explained what had happened and a police bulletin was issued describing Morgan's vehicle and [J.M.]. At approximately 3:45 a.m., Ambridge Police Officer Michael McQuaide located [J.M.], who was then transported to Aliquippa Hospital where a medical examination was conducted. At the hospital, [J.M.] told the investigating police officers that Appellant forced her to perform oral sex and engage in vaginal intercourse with him and four other men, who were later identified as Brandon Revis, Demarkus Walker, Enrico Jackson and Carlos Hicks. Walker subsequently stated that he and Jackson watched Appellant rape [J.M.]. When Appellant finished with her, all the men took turns raping and sexually assaulting her. When Appellant was arrested, he was found to be in possession of jewelry that belonged to [J.M.].

Appellant was charged with multiple counts of rape, involuntary deviate sexual intercourse (IDSI), sexual assault, kidnapping, unlawful restraint, robbery, terroristic threats, simple assault, aggravated assault, and criminal conspiracy, and one count each of carrying a firearm

without a license and robbery of a motor vehicle.[3] On September 26, 2006, a jury convicted Appellant of three counts of kidnapping, four counts of robbery, one count of sexual assault, one count of carrying a firearm without a license, three counts of terroristic threats, one count of simple assault and one count of aggravated assault with a deadly weapon. [18 Pa.C.S. §§ 2901, 3701, 3124.1, 6106, 2706, 2701, and 2702, respectively.] The trial court ordered a pre-sentence investigation and report. The trial court also ordered an investigation to be conducted pursuant to Pennsylvania's version of Megan's Law[, former 42 Pa.C.S. §§ 9791-9799.9].

A Megan's Law hearing was conducted on February 7, 2007, after which the trial court determined that Appellant is a sexually violent predator. That same day, the trial court sentenced Appellant to serve an aggregate term of twenty-three to fifty-four years of incarceration. Appellant filed a post-sentence motion with several supplements, all of which were denied on July 5, 2007.

*Commonwealth v. Cox*, 1873 WDA 2007 (Pa. Super. Dec. 2, 2008) (unpublished memorandum at 1-4). Appellant was represented at trial by Gerald V. Benyo, Esq., and Todd J. Hollis, Esq. ("trial counsel").

Although Appellant did not take a timely appeal, the trial court reinstated his direct appeal rights on October 1, 2008. *Id.* at 4. Appellant, represented by Patrick K. Nightingale, Esq. ("direct appeal counsel"), took a direct appeal, and this Court affirmed on December 2, 2008. *Id.* at 35. The

---

[3] At trial, Appellant testified on his own behalf and acknowledged assaulting Morgan. *See* N.T. Trial VI, 9/21/06, at 1114. However, he denied possessing a firearm and insisted that J.M. consented to all of the sexual activity. *See, e.g.*, *id.* at 1116, 1118. Additionally, Appellant conducted extensive cross-examination of J.M. and his co-defendants on the issue of J.M.'s alleged consent. *See, e.g.*, N.T. Trial III, 9/18/06, at 70-77; N.T. Trial V, 9/20/06, at 848-50.

Pennsylvania Supreme Court denied allowance of appeal on November 5, 2009. *Commonwealth v. Cox*, 197 WAL 2009 (Pa. Nov. 5, 2009).

Appellant, acting *pro se*, filed a timely PCRA petition, which the PCRA court received on October 27, 2010. The court appointed counsel, Mitchell P. Shahen, Esq., on December 7, 2010. On April 11, 2012, Attorney Shahen filed an amended PCRA petition claiming prior counsel failed to challenge (1) the systematic exclusion of blacks from the jury selection process, (2) references to Appellant's co-defendants' guilty pleas and their agreements to testify truthfully, (3) the Commonwealth's improper remarks during opening statements, trial, and closing statements, and (4) contact between the victim's family and two jurors in the courthouse's parking garage. Additionally, Appellant asserted trial counsel was ineffective for failing to seek admission of evidence of the victim's prior sexual conduct, namely, the presence of seminal fluid that was not matched to the victim's boyfriend, Appellant, or Appellant's co-defendants. Attorney Shahen's petition also listed two claims that Appellant raised in his *pro se* petition, but which counsel believed lacked merit.

Subsequently, Attorney Shahen filed two motions: (1) a counseled motion for a *Grazier* hearing on July 13, 2012,[4] and (2) a motion to add Appellant's *pro se* claims to the amended PCRA petition on August 16, 2012.

---

[4] *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998). Appellant previously filed a *pro se* motion for a *Grazier* hearing, which the PCRA court docketed on June 29, 2012.

The PCRA court, on August 23, 2012, granted leave to add claims to the amended petition, but directed counsel to address whether those claims lacked merit. On August 28, 2012, the court denied the amended petition and added claims without a hearing and denied the motion for a *Grazier* hearing as moot. The court's order and opinion did not address Appellant's ineffectiveness claim regarding evidence of J.M.'s prior sexual activity. The court did not issue a Pa.R.Crim.P. 907 notice in advance of its order.

On September 14, 2012, Attorney Shahen filed a no-merit brief with respect to the claims raised in Appellant's initial *pro se* petition, including Appellant's claim that direct appeal counsel should have challenged the Commonwealth's grounds for striking a juror under *Batson*. The PCRA court, on September 17, 2012, issued a Rule 907 notice of its intent to dismiss Appellant's "*pro se* petitions." On October 12, 2012, the court received a *pro se* response from Appellant.

No further action was taken until October 31, 2013, when the PCRA court received Appellant's *pro se* motion for a *Grazier* hearing. On December 23, 2013, the PCRA court scheduled a hearing on the motion. Following a hearing, the court, on January 13, 2014, granted leave to Attorney Shahen to withdraw and apprised Appellant of his right to proceed *pro se* or with privately retained counsel. The court granted Appellant leave to file an amended petition within 120 days. Appellant requested, and was granted, an extension of time.

On July 14, 2014, Chris R. Eyster, Esq., entered an appearance on Appellant's behalf and filed another counseled PCRA petition. Appellant, through counsel, asserted (1) trial counsel was ineffective for failing to seek appointment of a defense expert for the SVP proceeding, (2) his sentence was illegal under *Alleyne*, and (3) the Commonwealth, at sentencing, committed prosecutorial misconduct by denying that it had offered a plea deal to Appellant for ten to thirty years' imprisonment.

On July 22, 2014, without knowledge of Attorney Eyster's petition, the PCRA court entered an order denying Appellant's first PCRA petition without a hearing. On July 30, 2014, Appellant filed a motion for reconsideration and, on August 12, 2014, the PCRA court vacated its order. On October 29, 2014, the court issued a notice of its intent to dismiss. Appellant filed a counseled response on November 24, 2014. The court denied the petition without a hearing on December 22, 2014. Appellant timely appealed and complied with the court's order to submit a Pa.R.A.P. 1925(b) statement. Following a remand, the PCRA court permitted Attorney Eyster to withdraw and found Appellant's decision to proceed *pro se* was knowing and voluntary.[5] This appeal followed.

---

[5] After this Court remanded the matter for a determination of Attorney Eyster status, Attorney Eyster filed an application for relief in this Court based, in part, on a scheduling conflict with the trial court. We dismiss the application for relief as moot.

Appellant's *pro se* brief presents six questions for review, which we have reordered as follows:

> Whether the PCRA court erred in finding that direct appeal counsel did not render ineffective assistance of counsel in violation of the 6th Amendment under the U.S. Constitution for counsel's failure to argue on appeal that the trial court abused its discretion, therein violating the appellant's Due Process rights under the 14th Amendment of the U.S. Constitution, by allowing a juror to remain on the jury after finding out that the juror was untruthful on his questionnaire and whether the inability of [A]ppellant to have this critical withheld information made available/known to him at the time of the initial voir dire, effectively deprived the defense of its opportunity to utilize one of its peremptory challenges to have the juror removed, causing [A]ppellant to be prejudiced?
>
> Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance under the 6th Amendment of the U.S. Constitution for counsel's failure to argue on appeal that the trial court violated [A]ppellant's Due Process rights under the U.S. Constitution, 8th Amendment right to be free from cruel and unusual punishment when it abused its discretion in sentencing [A]ppellant to an illegal sentence pursuant to [**Alleyne**]?
>
> Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance under the 6th Amendment of the U.S. Constitution when counsel did not move the Court for appointment of a defense expert, whose testimony would have rebut the Commonwealth's psychiatric expert who condemned [A]ppellant as a psychopath and SVP?
>
> Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance of counsel in violation of the 6th Amendment under the U.S. Constitution for counsel's failure to argue on appeal that the trial court abused its discretion, for refusing to remove 2 jurors who had ex-parte communication with the mother and father of one of the alleged victims, causing the

- 8 -

[A]ppellant to be denied his U.S. Constitutional right to a fair trial?

Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance under the 6th Amendment of the U.S. Constitution for counsel's failure to argue on appeal that the trial court abused its discretion when it allowed the Commonwealth to use its peremptory strike to exclude a juror on the basis of race, thereby violating [A]ppellant's 14th Amendment right to a fair trial under the U.S. Constitution, and 8th Amendment right to Equal Protection of the law and federal law, pursuant to **Batson** . . . ?

Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance under the 6th Amendment of the U.S. Constitution when counsel failed to take steps to seek admission of evidence consisting of the victim's sexual activities with a third party, other than her paramour or one of the other codefendant's for the purpose of attacking her credibility?

Appellant's Brief at 4-5.

This Court has stated:

Our standard and scope of review for the denial of a PCRA petition is well-settled.

[A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

**Commonwealth v. Charleston**, 94 A.3d 1012, 1018-19 (Pa. Super. 2014)

(citation omitted), *appeal denied*, 104 A.3d 523 (Pa. 2014).

- 9 -

Appellant's first three claims warrant no relief or extensive discussion. First, Appellant asserts direct appeal counsel was ineffective for failing to challenge the alleged misconduct of a juror, who belatedly disclosed his wife's prior sexual assault. *See* Appellant's Brief at 11. However, the underlying claim was raised in his direct appeal and denied on its merits. *Cox*, 1873 WDA 2007 at 19 ("In light of the evidence of record, we can find no indication that the trial court committed a palpable abuse of discretion in declining to disqualify Juror No. 3, and we decline to grant relief on this claim."). Thus, there is no basis to this claim of ineffectiveness.

Second, as to Appellant's intended *Alleyne* challenge, the PCRA court concluded that this claim was meritless because *Alleyne* did not apply retroactively. *See* Appellant's Brief at 28; PCRA Ct. Op. II, 10/29/14, at 2 (unpaginated). The Pennsylvania Supreme Court recently held, "*Alleyne* does not apply retroactively to cases pending on collateral review." *Commonwealth v. Washington*, 142 A.3d 810, 820 (Pa. 2016). Instantly, Appellant's sentence became final on February 3, 2010, after the Pennsylvania Supreme Court denied allowance of appeal in Appellant's direct appeal on November 5, 2009, and the period to petition the United States Supreme Court for writ of *certiorari* expired. *Cf.* 42 Pa.C.S. § 9545(b)(3). *Alleyne* was decided on June 17, 2013, more than three years after Appellant's sentence became final. *Cf. Alleyne*, 133 S. Ct. at 2151. Therefore, there is no merit to Appellant's argument that *Alleyne* should

apply retroactively and render his sentence illegal for the purposes of collateral review.[6] *See Washington*, 142 A.3d at 820.

Third, although Appellant suggests trial counsel should have obtained an expert to rebut the Commonwealth's SVP expert, the PCRA court properly determined that this Court's decision in *Commonwealth v. Masker*, 34 A.3d 841 (Pa. Super. 2011) (*en banc*), bars consideration of that claim under the PCRA. **See** Appellant's Brief at 39; PCRA Ct. Op. II at 1 (unpaginated). Specifically, the *Masker* Court held that challenges to the process by which an SVP determination was reached, including claims that trial counsel should have obtained a rebuttal expert, were not cognizable under the PCRA.[7] *See Masker*, 34 A.3d at 842-44. Therefore, we discern no basis to disturb the PCRA court's ruling on this claim.

Having reviewed Appellant's first three claims, we conclude no appellate relief is due. We now proceed to Appellant's remaining three claims, which are framed in terms of ineffective assistance of trial or direct appeal counsel.

---

[6] Appellant does not develop a separate cruel and unusual punishment argument.

[7] In any event, Appellant has not established that a rebuttal expert would be available and willing to contradict the Commonwealth's expert. **See Commonwealth v. Chmiel**, 30 A.3d 1111, 1143 (Pa. 2011) ("The mere failure to obtain an expert rebuttal witness is not ineffectiveness. Appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance appellant's cause." (citation omitted)).

In reviewing these claims, we are mindful that

> [c]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. In Pennsylvania, we have refined the **Strickland** [**v. Washington**, 466 U.S. 668 (1984),] performance and prejudice test into a three-part inquiry. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. . . . To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

**Charleston**, 94 A.3d at 1019 (some citations omitted); **see also Commonwealth v. Blakeney**, 108 A.3d 739, 750 (Pa. 2014) (noting "[t]o establish . . . prejudice in the appellate representation context, the petitioner must show that there is a reasonable probability that the outcome of the direct appeal proceeding would have been different but for counsel's deficient performance."), *cert. denied*, 135 S. Ct. 2817 (2015).

Appellant, in his fourth claim, asserts direct appeal counsel was ineffective for not challenging the trial court's decision to not replace two jurors who had contact with J.M.'s victim advocate and J.M.'s stepfather in the courthouse's parking garage. Appellant's Brief at 20-25. Appellant asserts the issues arising from the contact, which occurred while the jury was deliberating and was objected to by trial counsel, should have been raised on direct appeal and warrants a new trial. **Id.** at 13. Appellant also

suggests that trial counsel should have insisted on further *voir dire* of the parties involved in the contact, as well as the police detective to whom the victim advocate and J.M.'s stepfather initially reported the contact. **Id.** at 21. No relief is due.

We review the underlying claim that the trial court erred in denying a mistrial for an extraneous influence on the jury for an abuse of discretion. **Commonwealth v. Tharp**, 830 A.2d 519, 532 (Pa. 2003).

> An extraneous influence may compromise the impartiality and integrity of the jury, raising the specter of prejudice. The relevant inquiry is whether the extraneous influence caused "a reasonable likelihood of prejudice." In making the "reasonable likelihood of prejudice" determination, the court must consider: "(1) whether the extraneous influence relates to a central issue in the case or merely involves a collateral issue; (2) whether the extraneous influence provided the jury with information they did not have before them at trial; and (3) whether the extraneous influence was emotional or inflammatory in nature." The burden is on the party claiming prejudice.

**Commonwealth v. Sneed**, 45 A.3d 1096, 1115 (Pa. 2012) (citations omitted).

Instantly, the PCRA court denied relief on this issue for the following reasons:

> [Appellant] asserts that on or about September 25, 2006 in the Beaver County Courthouse Parking Garage, the stepfather of the victim, who was not a witness in the trial, and a Beaver County Victim Advocate, who was also not a witness in the trial, assisted two Jurors with obtaining a jump for a dead automobile battery around 5:30 p.m., one (1) hour past the normal close of Courthouse business. [Appellant] contends that these two particular Jurors, Nos. 5 and 8, could clearly have identified the "allegiance" of

- 13 -

the two individuals who assisted them that evening because they were, in fact, White or Caucasian, and the victim's family was entirely Caucasian, while the [Appellant]'s family was entirely Black or African American. [Appellant] claims this identification based solely on race of the parties involved, as well as the time and manner of the contact in the garage makes for a situation where the Jurors involved would likely be prejudiced against [Appellant].

Upon questioning by counsel and the Court in Chambers, it was determined that Juror No. 5 was the individual with a dead automobile battery and Juror No. 8 was present at the time the interactions took place. Juror No. 5 stated that she did not know the individuals who assisted her, had never seen the individuals, nor was anything about the trial discussed with these two individuals. Juror No. 5 answered that nothing that transpired in the garage would affect her ability to view and decide the case.[ ] Juror No. 8 was questioned similarly and responded that she did not know these two individuals to be associated with the trial, nor could she identify them and that nothing was said relating to this trial or deliberations.

A defendant has the right to have his or her case heard by a fair, impartial and unbiased jury and *ex parte* contact between jurors and witnesses is viewed with disfavor. ***Commonwealth v. Brown***, . . . 786 A.2d 961, 972 ([Pa.] 2001). There is, however, no *per se* rule in this Commonwealth requiring a mistrial anytime there is improper or inadvertent contact between a juror and a witness. ***See Commonwealth v. Mosley***, . . . 637 A.2d 246, 249 ([Pa.] 1993). Whether such contact warrants a mistrial is a matter addressed primarily to the discretion of the Trial Court. ***Brown***, 786 A.2d at 972 (citation omitted). A Trial Court need only grant a mistrial where the alleged prejudicial event may reasonably be said to have deprived the moving party of a fair and impartial trial. ***Commonwealth v. Fletcher***, . . . 750 A.2d 261, 282 ([Pa.] 2000).

In this case, the facts do not present a situation where an event can reasonably be said to have deprived

- 14 -

> [Appellant] of a fair and impartial trial. The Jurors did not know the individuals with whom they came in contact, they could not ascertain any involvement of those individuals with the trial, no such contact related to the trial, no conversations were had involving the trial, and both Jurors stated that nothing that transpired would affect their ability to continue as members of the Jury. The mere opportunity to influence a juror does not require a mistrial, and such determination is within the sound discretion of the Trial Court. Trial counsel was not ineffective for failure to pursue this issue on appeal, and [Appellant's] position holds no merit.

PCRA Ct. Op. I, 8/28/12, at 7-9 (unpaginated) (some citations omitted).

We have reviewed the record related to Appellant's underlying claim and find it supports the PCRA court's factual findings. Moreover, the governing law supports the court's legal conclusions that Appellant's underlying appellate issue was meritless and Appellant could not demonstrate that the result of his appeal would have been different had the issue been raised. *See Blakeney*, 108 A.3d at 740; *Sneed*, 45 A.3d at 1115; *Tharp*, 830 A.2d at 532. Although Appellant further asserts trial counsel should have insisted on further examination of all parties involved or related to the contact, he does not demonstrate that any additional evidence would have altered the trial court's determination that Jurors 5 and 8 remained impartial despite the contact. *See Blakeney*, 108 A.3d at 740; *Charleston*, 94 A.3d at 1019. Therefore, we affirm the PCRA court's denial of relief of this claim.

Appellant next claims that direct appeal counsel was ineffective for not challenging the Commonwealth's striking of a juror. Appellant's Brief at 37-39.[8] We disagree.

Appellant's claim arises out of the striking of a Black female juror initially designated as SP2-29 and seated as Juror 12.[9] When completing the juror questionnaire, the prospective juror indicated "yes" when asked whether she would have a problem following the court's instruction when the defendant does not testify. N.T. *Voir Dire*, 9/14/06, at 198. During further examination, the prospective juror indicated that she would be able to follow

_____

[8] Appellant first raised this issue in his *pro se* PCRA petition. Appellant's first PCRA counsel, Attorney Shahen, did not include this claim in his amended PCRA petition. However, following the initial dismissal of the amended PCRA petition, Attorney Shahen, with leave from the PCRA court, raised the *pro se* claim and pursuant to the court's directions, addressed it in a no-merit brief. The PCRA court adopted first PCRA counsel's conclusion that the claim lacked merit and did not author a separate opinion. Appellant filed a *pro se* response to the dismissal reasserting this claim, but did not raise an independent claim of Attorney Shahen's ineffectiveness.

Appellant subsequently filed an amended PCRA petition through his second PCRA counsel, Attorney Eyster, which the PCRA court agreed to consider. However, Attorney Eyster took no further action regarding Appellant's ***Batson*** claim and did not reframe the claim in terms of the PCRA court's procedural error or prior PCRA counsel's ineffectiveness. Therefore, we will address the underlying merit of Appellant's ***Batson*** claim, but will not consider whether the PCRA court erred in dismissing this claim based on its adoption of Attorney Shahen's no-merit brief or PCRA counsel's assessment of the claim. ***See Commonwealth v. Pitts***, 981 A.2d 875, 880 (Pa. 2009).

[9] We note that in denying a claim of the systemic exclusion of Blacks from the Beaver County jury process, the PCRA court noted that there were two Blacks in the pool, which roughly corresponded with the proffered census data regarding the racial and ethnic composition of the county's population.

the court's instructions. *Id.* at 199. The prospective juror also stated that she did not know Appellant personally, but knew some of his family members. *Id.* at 200. Specifically, the prospective juror owned a shop in Alquippa, and Appellant's aunt owned the store next door approximately two years earlier. *Id.* at 200-01. The prospective juror discovered Appellant's aunt and Appellant were related when the juror read the newspaper and then talked to her mother-in-law. *Id.* at 206-07. The prospective juror stated that she saw Appellant's aunt in court that day and felt "nervous." *Id.* at 207. However, she maintained it would not be uncomfortable for her to find Appellant guilty and return to the community. *Id.* The prospective juror was also a distant relative of one of the co-defendants who testified against Appellant. *Id.* at 204.

The Commonwealth moved to strike the juror for cause, which the trial court denied based on her answer that she was prepared to fairly and impartially decide the case. *Id.* at 208-09. The Commonwealth then indicated it would use its first peremptory strike, and the following exchange occurred:

> [Trial Counsel]: We have gone through 24 jurors, and the district attorney has not challenged anybody. Now a black woman, and [she is] being challenged.
>
> [The Commonwealth]: . . . None of the other jurors said they knew [Appellant's] family, saw his aunt here, felt uncomfortable, or were related to any of the other witnesses. You know, I have already accepted an African-American person on the jury showing we are not using any discriminatory reasons.

- 17 -

*Id.* at 209.

The trial court sustained Appellant's objection to the peremptory challenge, indicating that it did not believe "the Commonwealth has expressed a satisfactory reason at this point in time, so this Court should not find that it is not racially motivated." *Id.* at 210. The prospective juror was seated as the twelfth juror, and the parties thereafter selected two alternates.

The following day, the Commonwealth requested reconsideration of the trial court's ruling. The court, over trial counsel's objections, granted reconsideration and overruled Appellant's *Batson* objection to the Commonwealth's peremptory strike. The trial court reaffirmed its ruling to deny the Commonwealth's for-cause challenge, but concluded that it erred by using a for-cause standard when reviewing the *Batson* objection to the Commonwealth's intended use of a peremptory strike. N.T., 9/15/06, at 279. The court determined that the Commonwealth's explanations were "clearly not in any way, shape of form, related to race." The court concluded the Commonwealth met its burden and therefore directed that the prospective juror be excused and the first alternate take her place. *Id.* at 279-80.

When reviewing the PCRA court's ruling on the underlying *Batson* claim, we note an appellate court "may overturn the trial court's decision [on a *Batson* objection] only if it is clearly erroneous." *Commonwealth v.*

- 18 -

***Sanchez***, 36 A.3d 24, 45 (Pa. 2011) (citation omitted).  As the Pennsylvania Supreme Court noted, "'There will seldom be much evidence bearing' on the 'decisive question' of 'whether counsel's race-neutral explanation for a peremptory challenge should be believed.' '[T]he best evidence often will be the demeanor of the attorney who exercises the challenge.'" ***Commonwealth v. Cook***, 952 A.2d 594, 603 (Pa. 2008) (citations omitted).  Therefore, we accord "great deference" to the trial court's findings of fact "because a reviewing court . . . is not as well positioned as the trial court to make credibility determinations."  ***Id.*** (citation omitted).

The principles for considering a ***Batson*** challenge are well settled.

> The ***Batson*** Court recognized that peremptory challenges "permit [ ] those to discriminate who are of a mind to discriminate" based on race in jury selection. "[T]he harm ***Batson*** seeks to avoid is not only a trial where members of the defendant's own race have been excluded from the jury on account of their race, but also the harm to the prospective jurors and the community at large that results when citizens are denied participation in jury service based upon their race."  The successful ***Batson*** objector is the third party beneficiary of the venire person's equal protection right not to be excluded from a jury on account of his/her race.
>
> To prove a defense-side ***Batson*** claim, the defendant has to initially establish "a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race." If the *prima facie* showing is made, "the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue."  The trial court ultimately makes a determination of whether the defense has carried its burden of proving purposeful discrimination.

***Sanchez***, 36 A.3d at 44 (citations omitted).

- 19 -

With respect to the first prong of a **Batson** claim, if the Commonwealth concedes the existence of a *prima facie* case, a reviewing court may proceed to consider the remaining two **Batson** prongs. **See id.** at 44-45. Under the second **Batson** prong, the burden shifts to the Commonwealth. **Id.** The Commonwealth must proffer a "clear and reasonably specific explanation of its actions which must consist of legitimate reasons of exercising the challenges." **Commonwealth v. Correa**, 620 A.2d 497, 501 (Pa. Super. 1993) (citations and quotation marks omitted). At this stage, the Commonwealth need only "forward a facially valid race-neutral explanation and . . . there is no demand [for] an explanation that is persuasive, or even plausible[.]" **Sanchez**, 36 A.3d at 45 (citation and quotation marks omitted). An explanation is race neutral on its face unless a discriminatory intent is inherent in the explanation. **Id.**

If the Commonwealth satisfies the second **Batson** prong, the third prong requires the trial court to determine whether the defendant established purposeful discrimination by the Commonwealth. **See id.** at 44. "It is at this stage that the **persuasiveness** of the facially-neutral explanation proffered by the Commonwealth is relevant." **Cook**, 952 A.2d at 602-03 (citation omitted). "An explanation which at first blush appears to be clear, specific and legitimate may be exposed as a pretext for racial discrimination when considered in the light of the entire voir dire

proceeding." ***Commonwealth v. Garrett***, 689 A.2d 912, 917 (Pa. Super. 1997) (citation omitted). However,

> [t]here are any number of bases on which a party may believe, not unreasonably, that a prospective juror may have some slight bias that would not support a challenge for cause but that would make excusing him or her desirable. Such reasons, if they appear to be genuine, should be accepted by the court, which will bear the responsibility of assessing the genuineness of the prosecutor's response and of being alert to reasons that are pretextual. If the court determines that the prosecution's presentation is inadequate to rebut the defendant's proof, the court should declare a mistrial and a new jury should be selected from a new panel.

***Commonwealth v. Lloyd***, 545 A.2d 890, 895 (Pa. Super. 1988) (citations and emphasis omitted). An explanation for striking a prospective juror need not rise to a level justifying a for-cause challenge. ***Commonwealth v. Rico***, 711 A.2d 990, 992 (Pa. 1998).

In light of the foregoing precepts, we discern no abuse of discretion in the trial court's decision to reconsider and overrule trial counsels' ***Batson*** objection. As indicated by the court, it employed the standard governing for-cause challenge when considering the objection. The court subsequently reconsidered that position and found that the Commonwealth's explanation was race-neutral. That determination substantially comports with the law. ***See id.*** at 992. Moreover, in light of the prospective juror's multiple, albeit distant, relations to the Appellant's family and a testifying co-defendant's family, there was adequate support in the record for the trial court's implicit finding that the Commonwealth's use of its peremptory strike was not

- 21 -

pretextual or an act of conscious discrimination.[10] In light of the foregoing, we conclude that Appellant cannot claim prejudice based on direct appeal counsel's failure to raise this issue on appeal and decline to disturb the PCRA court's denial of relief on this claim. **See Blakeney**, 108 A.3d at 740.

Appellant lastly claims that trial counsel were ineffective for failing to seek the admission of evidence that J.M. had sexual relations with someone other than Appellant, co-defendants, or her boyfriend at the time, Morgan. Appellant's Brief at 44-45. This claim was raised in the amended PCRA petition filed by Attorney Shahen, but was not addressed in the PCRA court's opinion and order denying relief without a hearing. However, we decline to remand for a supplemental opinion on this issue and affirm as our review reveals that this claim lacks arguable merit.

Section 3104 of the Crimes Code provides:

> **(a) General rule.—**Evidence of specific instances of the alleged victim's past sexual conduct . . . shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

---

[10] The Commonwealth, in its motion for reconsideration, presented additional allegations regarding the juror and her husband. **Cf.** Commonwealth's Brief at 13 (indicating the Commonwealth believed the juror's husband had been in prison with Appellant and the juror was untruthful on the jury questionnaire). However, the trial court did not make findings of fact or conclusions of law based on those allegations. Moreover, the trial court did not render a finding on the Commonwealth's assertion that another Black juror was seated.

**(b) Evidentiary proceedings.—**A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S. § 3104. The Rape Shield Law "prevent[s] a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim [and] exclude[s] irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." *Commonwealth v. Burns*, 988 A.2d 684, 689 (Pa. Super. 2009) (*en banc*) (citations and footnote omitted).

It is well settled that the Rape Shield Law

> cannot be both shield and sword. Here a statute is so designed to protect the witness's interest in preventing prejudicial disclosure of the witness's past behavior. It cannot at the same time preclude a defendant from offering evidence which is so highly probative of the witness's credibility that such evidence is necessary to allow/permit a jury to make a fair determination of the defendant's guilt or innocence. The statute must yield to a defendant's basic constitutional right.

*Commonwealth v. Spiewak*, 617 A.2d 696, 702 (Pa. 1992). Similarly,

> Evidence that tends to impeach a witness' credibility is not necessarily inadmissible because of the Rape Shield Law. When determining the admissibility of evidence that the Rape Shield Law may bar, trial courts hold an in camera hearing and conduct a balancing test consisting of the following factors: "(1) whether the proposed evidence is relevant to show bias or motive or to attack credibility;

(2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive or to challenge credibility."

*Commonwealth v. K.S.F.*, 102 A.3d 480, 483–84 (Pa. Super. 2014) (citations omitted).

Instantly, Appellant's proffer that J.M. may have had sexual relations with another person flies against the Rape Shield Law's purposes of preventing a shift in focus to the "virtue and chastity of the victim" and excluding "irrelevant and abusive inquiries" into the victim's prior sexual conduct. *See Burns*, 988 A.2d at 689. The mere fact that J.M. may have had sex with an unrelated party without her then-boyfriend's knowledge provides little insight into the specific events surrounding the sexual offenses for which Appellant was on trial. Additionally, it would not explain away the Commonwealth's theory of the case that J.M. did not consent to the sexual activity given Appellant's course of conduct that night.

Moreover, Appellant's proffer was not "highly probative" of J.M.'s credibility or her assertion that she did not consent. *See Spiewak*, 617 A.2d at 702. This was not a strictly "he-said-she-said" case. Two witnesses, Morgan and M.M., testified to Appellant's acts of violence preceding the sexual activity. Indeed, one of the testifying co-defendant's confirmed that Appellant shot the window of the car and placed the firearm against the back of J.M.'s head before the sexual activity occurred.

Lastly, the defense possessed ample alternatives to challenge the credibility of J.M. *See K.S.F.*, 102 A.3d at 483–84. This included J.M.'s testimony on cross-examination that Appellant did not directly threaten her or her companions before Appellant put his penis in her mouth and that co-defendants later asked her whether it was okay to engage in sexual acts and did not threaten or restrain her. The co-defendants, in turn, all testified that while they pleaded guilty, they believed the victim consented to sexual intercourse.

Therefore, having reviewed Appellant's claim, we cannot conclude his proffer would have been admitted at trial. Accordingly, Appellant cannot establish arguable merit to his claim of ineffective assistance. *See Charleston*, 94 A.3d at 1019. Thus, we affirm the PCRA court's ruling to deny relief on this claim.

Having reviewed Appellant's PCRA claims and arguments on appeal, we find no basis to disturb the PCRA court's determination that no relief was due.

Order affirmed. Application for relief dismissed as moot.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/14/2016</u>